UNIVERSAL ELECTRONICS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 93–11–00740

(Dated March 7, 1996)

*Sonnenberg & Anderson (Steven P. Sonnenberg, Jerry P. Wiskin,* and *Frederick W. Faery); Universal Electronics, Inc. (Richard Firehammer, Jr.)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Saul Davis),* Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service *(Sheryl A. French),* of counsel, for defendant.

*Michael P. Maxwell (Edith Sanchez Shea)* for amicus curiae, Gemstar Development Corporation.

## OPINION

GOLDBERG, *Judge:* This case comes before the Court following trial *de novo*. Plaintiff, Universal Electronics, Inc. ("Universal"), primarily argues that the subject remote controls and parts should be classified as "electrical machines and apparatus, having individual functions, not specified or included elsewhere," and as parts of the same, with a duty rate of 3.9 percent *ad valorem*. In the alternative, Universal argues that the subject merchandise should be classified as "electric sound or visual signaling apparatus," and as parts of the same, with a duty rate of 2.7% *ad valorem*. On the other hand, defendant, the United States, argues that the United States Customs Service ("Customs") properly classified many entries of the subject merchandise under the tariff provision for "boards, panels, and other bases for electric control," with the rate of duty depending on the date of entry. In a counterclaim, defendant asserts that Customs should have classified the rest of the entries of the subject merchandise in a similar manner.

The Court exercises its jurisdiction pursuant to 28 U.S.C. §§ 1581(a) and 1583 (1988). After review of the evidence presented at trial, the Court enters judgment in favor of defendant.

## BACKGROUND

The subject merchandise entered the United States in 1992. It consists primarily of the following Universal remote controls: (1) the "One For All 6," models 4000 and 4300; (2) the "One For All 3 'Big Easy'," model 2085; and (3) the "One For All 4," models 2000, 2601, 2608, and 2644. The subject merchandise also consists of one entry of parts "designed, produced, intended, and otherwise dedicated for use with" the subject remote controls. (Pl's First Amended Compl. at 13).

The remote controls at issue are hand-held. They work with different brands of appliances, such as Sony and Toshiba. In addition, they control different types of appliances, such as televisions and stereos.

Plaintiff and defendant agree that all of the remote controls at issue function in essentially the same manner. (Pl's Pre-Trial Mem. at 7–8.)

Defendant's expert in the area of control systems, Professor Richard Costello, testified that if a person wishes to change the channel on a television, the person pushes a specified button on the battery-powered remote control. The button is a switch, and when it is pressed, it completes an electrical circuit. When completed, the electrical circuit sends voltage to a designated "input," i.e., point of connection through which electricity is received, on a microcontroller in the remote control. Voltage received through this particular point of connection informs the microcontroller of the user's desire to change the channel. The microcontroller then initiates a set of instructions using electrical pulse signals, which are sent to an infrared light-emitting diode. The light-emitting diode converts the electrical pulse signals into infrared light signals. The infrared light signals are emitted from the remote control, and travel through the air as electromagnetic energy, until they reach an infrared receiver attached to a microcontroller in the television. There the infrared light signals are converted into a digital data stream, and then a digital command word, which causes the television microcontroller to send the necessary amount of electricity to the part of the television that causes the channel to change.

## DISCUSSION

### A. *The Presumption of Correctness:*

Customs' classification of merchandise usually enjoys a statutory presumption of correctness that the plaintiff must overcome. 28 U.S.C. § 2639(a)(1) (1988). This presumption of correctness does not attach to Customs' classification, however, when Customs admits that its classification is erroneous. *Tomoegawa USA, Inc. v. United States,* 12 CIT 112, 114, 681 F. Supp. 867, 869 (1988), *aff'd in part,* 7 Fed. Cir. (T) 29, 861 F.2d 1275 (1988).

In this case, Customs classified many entries of the subject merchandise under subheading 8537.10.00 of the Harmonized Tariff Schedules of the United States ("HTSUS"), which provides for boards, panels, and other bases for electric control. Customs classified the rest of the entries of the merchandise as parts of televisions, under HTSUS subheading 8529.90.45. Defendant now recognizes that in order to qualify as parts of televisions, under subheading 8529.90.45, items must use radio frequency signals to perform their functions. (D's Pre-Trial Mem. at 2.) Defendant admits that Customs' classification of the merchandise as parts of televisions is erroneous because the merchandise does not use radio frequency signals. In a counterclaim, defendant seeks to have the entries which Customs classified as parts of televisions reliquidated under the tariff provisions for boards, panels, and other bases for electric control, and parts thereof. Consequently, the Court finds that the presumption of correctness does not attach to Customs' classification of entries of the merchandise as parts of televisions.

Plaintiff argues that the presumption of correctness should not attach to Customs' classification of the other entries of the merchan-

dise, under the tariff provision for boards, panels, and other bases for electric control, either. According to plaintiff, a lawyer who participated in classifying the merchandise under this provision failed to remember precisely what he reviewed before the merchandise was classified, and demonstrated only a rudimentary understanding of the merchandise. (Pl's Pre-Trial Mem. at 14–20.) Plaintiff essentially argues that the failure of this representative of Customs to justify classification under subheading 8537.10.00 is tantamount to an admission that the classification is erroneous.

The Court disagrees with plaintiff's argument. The failure of a retired attorney who participated in the classification of merchandise to remember how he classified the merchandise does not amount to an admission that Customs' classification of the merchandise is erroneous. This is especially true because the attorney did not act alone in classifying the merchandise under HTSUS subheading 8537.10.00. At trial, a Customs employee, Robert Slomovitz, testified that a Customs Import Specialist also classified the merchandise under subheading 8537.10.00. However, the Customs Import Specialist died before he could testify regarding his reasons for the classification. Consequently, the Court finds that the statutory presumption of correctness attaches to Customs' classification of entries of the merchandise under the HTSUS provision for boards, panels, and other bases for electric control.

To determine whether plaintiff can overcome the presumption in favor of Customs, the Court will first consider whether the classification applied by Customs encompasses the subject merchandise. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). The Court will then consider whether any of the alternative classifications proposed by plaintiff better describe the merchandise. *Id.*

B. *Bases for Electric Control:*

Before the enactment of the HTSUS, under the Tariff Schedules of the United States ("TSUS"), Customs issued rulings in which it stated that it could not classify the subject remote controls as "control panels," under TSUS provision 685.90, because the subject devices are not commonly known as "control panels." When the HTSUS was enacted, however, the language of the provision that covered "control panels" changed, making the provision broader. Rather than providing specifically for "control panels," HTSUS subheading 8537.10.00 (with emphasis added) provides for the following:

> boards, *panels* (including numerical control panels) consoles, desks, cabinets *and other bases, equipped with two or more apparatus of heading 8535 or 8536, for electric control or the distribution of electricity,* including those incorporating instruments or apparatus of Chapter 90, other than switching apparatus of heading 8517: For a voltage not exceeding 1,000 V.

In order to determine whether HTSUS subheading 8537.10.00 describes the subject merchandise, the Court must interpret relevant

portions of the broad provision. To do this, the Court will draw on lexicons, its own knowledge, and other reliable sources. *United States v. C.J. Tower & Sons,* 48 CCPA 87, 89, C.A.D. 770 (1961).

The Court begins by examining what HTSUS subheading 8537.10.00 means when it refers to "panels * * * and other bases." **The New IEEE Standard Dictionary of Electrical and Electronics Terms** 913 (5th ed. 1992) defines a "panel" as "[a] unit of one or more sections of flat material suitable for mounting electric devices." **Webster's New World Dictionary of American English** 114 (3d College ed. 1988) defines "bases" as the plural form of "base," and it defines a base as "the thing or part on which something rests; lowest part or bottom; foundation." Hence, lexicons indicate that the phrase "panels * * * and other bases," as used in subheading 8537.10.00, refers to foundations, which may be flat, upon which electrical devices rest.

HTSUS subheading 8537.10.00 specifies which electrical devices must be mounted on foundations in order for them to fall within its ambit: two or more apparatus of heading 8535 or 8536 must be mounted on the foundation. Heading 8535 is not relevant to this case. Heading 8536, however, describes electrical apparatus for voltage not exceeding 1,000 V. This includes apparatus for making connections to or in electrical circuits, such as switches and terminals. Thus, a foundation, which may be flat, might fall into subheading 8537.10.00 if it has two or more switches or terminals, for voltage not exceeding 1,000 V, mounted on it.

HTSUS subheading 8537.10.00 also requires that foundations with specified, mounted, electrical devices must be "for electric control or the distribution of electricity." Defendant's expert witness, Professor Costello, testified that an item is "for electric control" if it is part of a system whereby a person can input information concerning a desired output, and as a consequence, electricity causes the desired output to occur. For example, according to Professor Costello, a television control panel is "for electric control" because a person can push the "channel up" button on the panel, and as a consequence, electricity will cause the channel to change. Upon review of this testimony, the Court finds that in order for a foundation with specified, mounted, electrical devices to be classified under subheading 8537.10.00, it must be part of a system whereby a person can input information concerning a desired output, and as a consequence, electricity will cause the desired output to occur.

To summarize, the Court finds that HTSUS subheading 8537.10.00 refers to a very broad range of items. The subheading covers, among other things, foundations, which may be flat, upon which two or more electrical devices listed in heading 8536, such as switches and terminals for voltage of less than 1,000 V, are mounted. In addition, these foundations with specified, mounted, electrical devices must serve as part of a control system, i.e., they must be a part of a system in which information is input, and as a consequence, electricity causes the desired result to occur. Further, the Court finds that pursuant to the express language of subheading 8537.10.00, the foundations with mounted devices must not

be switching apparatus of heading 8517, and they must be for voltage not exceeding 1,000 V.

Having defined relevant portions of HTSUS subheading 8537.10.00, the Court turns to consider whether the subject remote controls fall within the subheading. Examination of the remote controls shows that they contain several flat panels. As Universal's expert in consumer electronics, Paul Thomsen, and Universal's founder, Paul Darbee, admit, many buttons that are switches are mounted on these panels. In addition, several terminals which hold batteries in place are mounted on the remote controls. Consequently, the Court finds that the subject remote controls are bases upon which two or more electrical devices of heading 8536 are mounted. The Court further finds that the subject remote controls are "for electric control" because they serve as part of a control system: users input information into the remote controls, and as a consequence, electricity causes the desired result to occur. As it is undisputed that the remote controls are not switching apparatus of heading 8517, and that they are for voltage of less than 1,000 V, the Court concludes that the language of subheading 8537.10.00 describes the devices.

Although the broad language of subheading 8537.10.00 describes the subject remote controls, plaintiff claims that Customs should not classify them under subheading 8537.10.00 for essentially four reasons. The Court will address each of plaintiff's four contentions in turn.

1. *The devices are not known as "Control Boards" or "Control Panels":*

First, plaintiff contends that Customs should not classify the subject devices under HTSUS subheading 8537.10.00 because the devices are not known as "control boards" or "control panels." The Court disagrees. Subheading 8537.10.00 is not limited to control boards and control panels. Rather, it expressly includes "boards, panels * * * consoles, desks, cabinets *and other bases * * * for electric control*" (emphasis added). Consequently, the fact that the subject remote controls are not commonly or commercially known as "control boards" or "control panels" does not prevent them from being classified under subheading 8537.10.00.

2. *The devices are not industrial:*

Second, plaintiff contends that Customs should refrain from classifying the subject remote controls under HTSUS subheading 8537.10.00 because the devices are not industrial, and so they are not of the same kind as other goods classified under the subheading. The Court disagrees. Goods are not expressly required to be industrial in order to fall within the scope of subheading 8537.10.00. Indeed, the non-binding explanatory notes for the subheading indicate that the subheading covers the following non-industrial goods: "[p]rogrammed switchboards to control * * * *domestic* electrical appliances such as washing machines and dishwashers" (emphasis added). Consequently, the fact that the

subject remote controls are not industrial does not prevent them from being classified under subheading 8537.10.00.

### 3. *The devices are not hard-wired to the appliances that they control:*

Third, plaintiff argues that Customs should refrain from classifying the subject remote controls under HTSUS subheading 8537.10.00 because the remote controls are not "hard-wired," i.e., connected by wires, to the devices that they control. Although subheading 8537.10.00 does not expressly require goods to be hard-wired to the devices that they control, plaintiff claims that other goods described by the subheading and its explanatory notes are hard-wired. According to plaintiff, the subject remote controls are not of the same kind as the other goods described by subheading 8537.10.00.

Plaintiff's argument might be more persuasive if the other goods described by subheading 8537.10.00 sent enough electricity directly through hard-wiring to make the desired results occur. For example, if pressing the "channel up" button on a mounted television control panel sent the requisite amount of electricity directly from the board through hard-wiring to the part of the television that causes the channel to change, then the television control panel would be directly involved in "electric control" through hard-wiring. Plaintiff's remote controls might then be distinguishable because they do not send the requisite amount of electricity directly through hard-wiring to make the desired results occur.

The other goods described by subheading 8537.10.00 do *not,* however, send enough electricity directly through hard-wiring to make the desired results occur. Both Mr. Thomsen and Professor Costello testified that when a button is pressed on a control panel, digital signals or low-voltage electric signals may be sent from the panel through hard-wiring to a microcontroller in the controlled appliance. These signals command the microcontroller to send the necessary amount of electricity to the part of the appliance that makes the desired result occur. Hence, the control panel merely sends signals; it does not send a sufficient amount of electricity directly through hard-wiring to make the desired result occur.

Moreover, some control boards are not hard-wired to the devices that they control. According to Professor Costello, some control boards that may be classified under HTSUS 8537.10.00 send microwave signals through the air to microcontrollers in the devices that they control. These microwave signals command the microcontrollers to send the electricity necessary to make desired results occur.

Upon review, the Court finds that the subject remote controls do not function in a substantially different way than other goods described by HTSUS subheading 8537.10.00. Instead, the subject remote controls are like other goods described by the subheading because, as discussed in greater detail previously, they send signals to microcontrollers in appliances that they control, and the microcontrollers send the electric-

ity necessary to make the desired result occur. Consequently, the fact that the subject remote controls are not hard-wired to the appliances that they control does not prevent them from being classified under subheading 8537.10.00.

### 4. *The devices are designed to send coded signals:*

Fourth, plaintiff contends that the subject remote controls should not be classified under HTSUS subheading 8537.10.00 because they are not designed for electric control; rather, according to Universal's founder, Paul Darbee, the remote controls are merely designed to emit coded infrared signals. The Court disagrees. The subject remote controls would fail to serve their intended purposes if they emitted invisible, coded, infrared signals that did absolutely nothing.

The Court finds that the subject remote controls serve their intended purpose when their signals are read by various appliances, causing these appliances to turn on or off, change channels, etc. Indeed, this finding is confirmed by the fact that the merchandise's packaging states that the device is "virtually limitless in the number of functions it can control," and by the fact that the device is commonly called a "remote control." Because the Court finds that the subject remote controls serve their intended purpose when they control various appliances, it must reject plaintiff's contention that the devices are not designed for electric control.

The Court concludes that HTSUS subheading 8537.10.00 provides Customs with a large net with which to fish; it covers many different items, including the subject remote controls. In spite of the diligent efforts of its counsel, plaintiff simply cannot impose its own restrictions on this subheading. Consequently, the Court finds that the subject remote controls are classifiable as bases for electric control, under HTSUS subheading 8537.10.00, and that the subject parts designed, produced, and dedicated for use with the remote controls are classifiable as parts thereof, under HTSUS subheading 8538.90.00.

### C. *Other Electrical Machines and Apparatus:*

Having determined that the subject remote controls are classifiable as under subheadings 8537.10.00 and 8538.90.00, the Court turns to consider whether any of the classifications proposed by plaintiff better describe the merchandise.

At trial, plaintiff primarily argued that the subject merchandise should be classified as "[e]lectrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter * * * Other machines and apparatus * * * Other," under subheading 8543.80.90, HTSUS, or as parts of the same, under subheading 8543.90.80, HTSUS. These provisions specify that they only apply to merchandise if it is not included elsewhere in Chapter 85 of the HTSUS. Because the Court has found that the merchandise is included elsewhere in Chapter 85, specifically, under subheadings 8537.10.00 and

8538.90.00, the Court may not classify the merchandise under HTSUS subheadings 8543.80.90 and 8543.90.80.

D. *Electric Sound or Visual Signaling Apparatus:*

Universal, with the support of amicus curiae, Gemstar Development Corporation, also argued that the subject merchandise should be classified as "[e]lectric sound or visual signaling apparatus (for example, bells, sirens, indicator panels, burglar or fire alarms), other than those of heading 8512 or 8530; * * * Other apparatus," under subheading 8531.80.00, or as parts of the same, under subheading 8531.90.00, HTSUS. Plaintiff admits that the infrared signals that the remote controls emit are neither audible, nor visible to the naked eye. The Court therefore finds that the emission of infrared signals by the subject devices does not qualify them for classification as electric sound or visual signaling apparatus.

Plaintiff claims, however, that the subject merchandise should be classified as visual signaling apparatus because a tiny light bulb on the face of the subject merchandise lights up to let the user know when the merchandise has sent infrared signals. The Court recognizes that the small bulb might be described as "visual signaling apparatus." However, if Customs were to classify an entire Universal remote control as visual signaling apparatus, Customs would be focusing on a minor and unessential feature of the device. In its entirety, the subject remote control is more completely and specifically described as a bases for electric control, as provided for by HTSUS subheading 8537.10.00. *See* explanatory notes to HTSUS General Rule of Interpretation ("GRI") 3 (suggesting that if "goods answer to a description which more clearly identifies them, that description is more specific than one where identification is less complete"). The Court therefore finds that the subject remote controls should be classified under subheading 8537.10.00, and the subject parts under subheading 8538.90.00. GRI 3 ("The heading which provides the most specific description shall be preferred to headings providing a more general description.")

## CONCLUSION

For all of the foregoing reasons, the Court holds that the subject remote controls are properly classified under subheading 8537.10.00, HTSUS, which provides for bases for electric control. The Court further holds that the subject parts designed and dedicated for use with the subject remote controls are properly classified under subheading 8538.90.00, which provides for parts of goods of subheading 8537. Judgment will be entered accordingly.